# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Steven Vlasich, | No. 1:07-cv-1760-SMM |
| Plaintiff, | **MEMORANDUM OF DECISION AND ORDER** |
| vs. | |
| J. Neubarth, et al., | |
| Defendants. | |

Plaintiff Steven Vlasich brought this civil rights action under 42 U.S.C. § 1983 against Defendant Dr. J. Neubarth (Dkt. 1). On August 17, 2009, Defendant moved for summary judgment (Dkt. 20). Plaintiff responded to the motion for summary judgment (Dkt. 26),[1] Defendant replied (Dkt. 29), and the matter is now suitable for decision. Having considered the parties' memoranda and other submissions, the Court now issues this Memorandum of Decision and Order granting Defendant's motion.

## BACKGROUND

Plaintiff's claims arose during his confinement at California State Prison Corcoran (Dkt. 1, Compl. 2). Plaintiff alleges that Defendant reduced his Vicodin prescription, which caused him withdrawal symptoms (id. at 5). Plaintiff alleges that Defendant did so with deliberate indifference toward his medical needs in violation of the Eighth Amendment (id.).

---

[1] The Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), informing Plaintiff of his obligation to respond (Dkt. 11).

Plaintiff had an appointment scheduled with Defendant on July 10, 2006 (Dkt. 26, Pla.'s Facts 2). Before meeting with Defendant, Plaintiff alleges that he had heard from numerous prisoners that Defendant had discontinued their narcotic pain medications without reviewing their medical file and without regard to the extent of their pain or injury (id.). As a result, Plaintiff preemptively filled out a grievance form against Defendant with the intent of giving it to him on July 10, 2006 if he discontinued Plaintiff's pain medication (id.; Dkt. 26, Ex. A).

When Plaintiff saw Defendant on July 10, 2006, Defendant educated Plaintiff on the alternatives to medication in order to help alleviate his pain, such as stretches, exercises, relaxation, and distraction (Dkt. 26, Pla.'s Undisputed Facts 1). Defendant referred Plaintiff to the pain specialist in Bakersfield (id.). Defendant also prescribed Tylenol for Plaintiff (id.). Defendant stated that he was going to discontinue Plaintiff's Vicodin pain medication (Pla.'s Facts 2). Plaintiff had been taking 50 mg of Vicodin per day, which Defendant immediately reduced to 20 mg per day (Dkt. 26, Pla.'s Decl. ¶ 11). Plaintiff explained to Defendant that a discontinuation of his pain medication would leave him in severe pain (Pla.'s Facts 2). Defendant restated his decision to discontinue Plaintiff's pain medication (id.). Plaintiff then gave Defendant the grievance form that he had previously filled out, which Defendant read and returned to him (id.). Plaintiff later submitted his grievance form to the prison officials (id. at 3). When Plaintiff's appointment ended, he returned to his cell.

About 24 hours later, Plaintiff alleges that he started experiencing severe back pain and withdrawal symptoms from the reduction of his pain medication (id.). Plaintiff's withdrawal symptoms included nausea, diarrhea, headaches, cold sweats, chills, a runny nose, and sleeplessness (id.). Plaintiff complained to Medical Technical Assistant (MTA) Olivera of his problems (id.).

On July 14, 2006, Olivera called the emergency room in California State Prison Corcoran's hospital (id.). Dr. Hasadsri declined to admit Plaintiff into the emergency room (id.). Instead, Dr. Hasadsri prescribed Imodium for Plaintiff's diarrhea (id.). On July 18,

2006, Plaintiff saw Dr. Zoher (id.). Dr. Zoher renewed Plaintiff's Vicodin prescription, which made Plaintiff feel much better (id.).

Plaintiff filed his Complaint against Dr. J. Neubarth and Dr. T. Hasadsri on December 3, 2007 (Dkt. 1).[2] Plaintiff seeks $25,000 in compensatory damages, $25,000 in punitive damages, and costs (id. at 5). On August 17, 2009, Defendant moved for summary judgment (Dkt. 20). Plaintiff then moved for voluntary dismissal of Dr. T. Hasadsri, which the Court granted, and Dr. T. Hasadsri was dismissed without prejudice (Dkts. 24, 25). As such, Dr. J. Neubarth is the only remaining Defendant.

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994).

---

[2] Plaintiff makes several allegations regarding separate events that occurred in 2009. As these events occurred after Plaintiff filed this lawsuit in December 2007, any claim regarding them is not properly before the Court because they are not part of his Complaint.

- 3 -

1  The moving party need not disprove matters on which the opponent has the burden of proof
2  at trial.  See Celotex, 477 U.S. at 323-24.  The party opposing summary judgment need not
3  produce evidence "in a form that would be admissible at trial in order to avoid summary
4  judgment."  Id. at 324.  However, the nonmovant "may not rest upon the mere allegations or
5  denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is
6  a genuine issue for trial."  Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v.
7  Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53
8  F.3d 1044, 1049 (9th Cir. 1995).

## DISCUSSION

10  Defendant moves for summary judgment, arguing that Plaintiff's mere disagreement
11  with his medical judgment does not give rise to a deliberate indifference claim.  Defendant
12  alleges that he determined Plaintiff had developed a resistance to Vicodin.  Therefore, he
13  placed Plaintiff on a weaning schedule, which called for a gradual reduction to his Vicodin
14  prescription.  Although Plaintiff alleges that he suffered severe pain and withdrawal
15  symptoms from the reduction, Defendant contends there is no evidence that he knew of these
16  adverse effects.  Alternatively, Defendant asserts that he is entitled to qualified immunity.

17  **I.    Deliberate Indifference**

18  "[D]eliberate indifference to serious medical needs of prisoners constitutes the
19  'unnecessary and wanton infliction of pain.'"  Estelle v. Gamble, 429 U.S. 97, 104 (1976).
20  To establish a § 1983 claim for violation of the Eighth Amendment based on prison medical
21  treatment, a plaintiff must demonstrate "acts or omissions sufficiently harmful to evidence
22  deliberate indifference to serious medical needs."  Id. at 106.  This requires the plaintiff to
23  satisfy both the objective and subjective components of a two-part test.  Hallett v. Morgan,
24  296 F.3d 732, 744 (9th Cir. 2002).  First, he must demonstrate that he suffered a serious
25  medical need.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  Second, the plaintiff
26  must show that the defendant's response to that serious medical need was deliberately
27  indifferent.  Id.  To act with deliberate indifference, a prison official must both know of and
28  disregard an excessive risk to inmate health.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

1  The official must both be aware of facts from which the inference could be drawn that a
2  substantial risk of serious harm exists and he must also draw the inference. Id. This
3  subjective approach focuses upon the mental attitude of the defendant. Id. at 839.

4  "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051,
5  1060 (9th Cir. 2004). In the medical context, deliberate indifference may be shown by (1) a
6  purposeful act or failure to respond to a prisoner's pain or possible medical need and
7  (2) harm caused by the indifference. Jett, 439 F.3d at 1096 (citing Estelle, 429 U.S. at 104).
8  Mere negligence or medical malpractice does not establish a sufficiently culpable state of
9  mind. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980). "[A] mere 'difference
10 of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate
11 indifference.'" Toguchi, 391 F.3d at 1058 (citations omitted). Further, differences in
12 judgment between an inmate and prison medical personnel regarding an appropriate medical
13 diagnosis or treatment are not enough to establish deliberate indifference. Jackson v.
14 McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

15 **A.    Serious Medical Need**

16 Plaintiff alleges that he had chronic lower back pain and walked with a cane due to
17 his lower back pain. Moreover, Plaintiff alleges that he had not had an epidural to treat his
18 back pain in months. Defendant does not dispute that Plaintiff had chronic lower back pain,
19 as Defendant diagnosed it (Dkt. 20, Def.'s Statement of Facts ("DSOF") ¶ 6). However,
20 Defendant disputes that Plaintiff needed the 50 mg of Vicodin in order to treat his lower back
21 pain. For purposes of discussion, the Court finds that Plaintiff had a serious medical need
22 as he suffered from chronic lower back pain. Though, the Court discusses whether Plaintiff
23 had a serious medical need for the Vicodin below.

24 **B.    Deliberate Indifference and Harm**

25 As evidenced by Plaintiff's medical records, Defendant contends that he reduced
26 Plaintiff's Vicodin prescription because Plaintiff had developed a resistance to Vicodin (id.
27 ¶ 9). Defendant further contends that he acted within his medical judgment, and his actions
28 were medically acceptable under the circumstances. Before Plaintiff's appointment,

Defendant alleges that he reviewed Plaintiff's medical records, as was his custom and practice (id. ¶ 3). When Defendant met with Plaintiff, Plaintiff complained of lower back pain radiating down the back of his right leg to his knee (id. ¶ 4). Although Defendant noted in Plaintiff's medical records that he was "fairly agile," Defendant diagnosed him with chronic lower back pain (id. ¶¶ 5-6; Dkt. 20, Ex. A, Pla.'s Med. Records).

Plaintiff requested more Vicodin for his back pain, which Defendant also noted in Plaintiff's medical records (DSOF ¶ 7; Dkt. 20, Ex. A, Pla.'s Med. Records). Defendant recognized that Plaintiff had been taking 50 mg of Vicodin each day for several months (DSOF ¶ 8). Based on Plaintiff's continued complaints of pain and his daily dosage of Vicodin, Defendant determined that Plaintiff had developed a resistance to Vicodin (id. ¶ 9).[3] Therefore, he placed Plaintiff on a weaning schedule, which called for a gradual reduction in Plaintiff's Vicodin prescription (id. ¶ 10; Dkt. 20, Ex. A, Pla.'s Med. Records) ("I will wean you off hydrocodone [Vicodin] because it causes tolerance and will not be effective."). Indeed, the evidence shows, and Plaintiff acknowledges, that Defendant did not completely discontinue Plaintiff's Vicodin prescription (Dkt. 20, Ex. A, Pla.'s Med. Records; Pla.'s Decl. ¶ 11). Rather, Defendant reduced Plaintiff's Vicodin prescription from 50 mg to 20 mg for the week (Dkt. 20, Ex. A, Pla.'s Med. Records). Thereafter, Defendant reduced the prescription by 10 mg each week until completely discontinued (id.). Defendant informed Plaintiff of his intent to wean Plaintiff off Vicodin. Defendant also prescribed Tylenol for Plaintiff as an alternative to Vicodin (id.). Additionally, Defendant educated Plaintiff on alternatives to medication in order to help alleviate his pain, such as stretches, exercises, relaxation, and distraction therapy (id.). Defendant also referred Plaintiff to a pain specialist (id.). After Defendant informed Plaintiff of the weaning schedule and alternative means of pain relief, Plaintiff refused any further examination or treatment (id.).

---

[3] Patients who take Vicodin for long periods of time are likely to develop a resistance to the opioid component of Vicodin, which leaves the acetaminophen component (Tylenol) as the only source of pain relief from Vicodin (Dkt. 20, Decl. of J. Neubarth, M.D. ¶ 13). This resistance reduces the effectiveness of Vicodin to relieve the patient's pain (id.).

Plaintiff disputes that Defendant reviewed his records (Pla.'s Decl. ¶ 4), but Plaintiff would have no way of knowing if Defendant reviewed them before meeting with him. Plaintiff alleges that he filed a grievance form before meeting with Defendant because he had heard that Defendant had discontinued other prisoners' narcotic pain medications (Pla.'s Undisputed Facts 2). When Plaintiff met with Defendant, he informed Defendant of his pain and pleaded with him to maintain his Vicodin prescription (Pla.'s Facts 2). However, Defendant still reduced his Vicodin prescription. Plaintiff disputes that he requested an increase in his Vicodin prescription (Dkt. 26, Pla.'s Disputed Facts 2), but in his grievance form dated July 28, 2006, he requested that his prescription be increased to 60 mg per day, which was 10 mg more than what he had been taking before Defendant reduced his dosage (Dkt. 26, Ex. A). Nonetheless, Plaintiff contends that Defendant's actions demonstrate his deliberate indifference to Plaintiff's serious medical needs.

In this case, though, Plaintiff cannot show that Defendant disregarded an excessive risk to his health by reducing the Vicodin prescription or acted with deliberate indifference to his chronic lower back pain. Although Defendant knew of Plaintiff's chronic lower back pain, Plaintiff does not demonstrate that he knew of and disregarded an excessive risk to Plaintiff's health. See Farmer, 511 U.S. at 837. Rather, Defendant concluded that Plaintiff had developed a resistance to Vicodin. Therefore, Defendant decided to gradually reduce Plaintiff's prescription each week. Defendant asserts that he did not reduce the prescription in order to cause Plaintiff pain. In fact, the purpose of the weaning schedule was to reduce the effects of any withdrawal symptoms that Plaintiff could have suffered (Decl. of J. Neubarth, M.D. ¶ 19). Furthermore, Defendant alleges that withdrawal symptoms do not present a life threatening or serious medical condition when a patient is placed on a weaning schedule (id. ¶ 20). While the patient may experience some discomfort while his body is adapting, Defendant avows that the symptoms are minor and non-life threatening (id.). Indeed, Plaintiff only experienced withdrawal symptoms such as nausea, diarrhea, headaches, cold sweats, chills, a runny nose, and sleeplessness for a few days (Pla.'s Facts 3). Plaintiff did not suffer any permanent physical injury (Dkt. 20, Ex. B, Dep. of Steven Vlasich 65:5-21,

1  87:18-20). Moreover, Defendant asserts there is no evidence that he had knowledge of
2  Plaintiff's withdrawal symptoms when Plaintiff later developed them. Therefore, there is no
3  evidence that when Defendant reduced Plaintiff's Vicodin prescription, Defendant was aware
4  that a substantial risk of serious harm to Plaintiff existed. See Farmer, 511 U.S. at 837.

5  　　　　Additionally, Plaintiff has not shown that Defendant acted deliberately indifferent to
6  his chronic lower back pain. Defendant prescribed Tylenol for Plaintiff as an alternative to
7  Vicodin. Defendant educated Plaintiff on alternatives to medication in order to help alleviate
8  his pain, such as stretches, exercises, relaxation, and distraction therapy. Defendant also
9  referred Plaintiff to a pain specialist. Defendant took these additional steps in order to
10 address Plaintiff's chronic lower back pain. He did not disregard Plaintiff's chronic lower
11 back pain; rather, the evidence shows that he attempted to manage it with alternatives to
12 Vicodin. As the evidence shows that Defendant took steps to manage Plaintiff's lower back
13 pain, Defendant did not unnecessarily and wantonly inflict pain upon Plaintiff. See Estelle,
14 429 U.S. at 104-05. Thus, the Court finds that there is no evidence that Defendant acted with
15 deliberate indifference to Plaintiff's chronic lower back pain, or that he knew of and
16 disregarded an excessive risk to Plaintiff's health when he reduced Plaintiff's Vicodin
17 prescription. See id.; Farmer, 511 U.S. at 837.

18 　　　　Plaintiff has not set forth specific facts showing that there is a genuine issue for trial
19 regarding his deliberate indifference claim. See Fed. R. Civ. P. 56(e). Plaintiff claims that
20 he filed a grievance form before meeting with Defendant because he had heard that
21 Defendant had discontinued other prisoners' narcotic pain medications. Therefore, Plaintiff
22 knew that Defendant would discontinue his pain medication before his appointment, which
23 "proves that [Defendant] took Plaintiff's pain medication with premeditation" (Dkt. 26, Pla.'s
24 Points & Auths. 2). Plaintiff also argues that Defendant's decision to discontinue his pain
25 medication after he showed Defendant his pre-written grievance form shows Defendant's
26 vindictiveness (id. at 6). However, Plaintiff's preemptive action only demonstrates his state
27 of mind; it does not demonstrate that Defendant was deliberately indifferent. In addition,
28 Plaintiff did not give the grievance form to Defendant until after he had already informed

1  Plaintiff of his decision to reduce the Vicodin (Pla.'s Undisputed Facts 2). Therefore, the
2  pre-filled grievance form does not serve as evidence of Defendant's mental state.

3    Moreover, although Plaintiff alleges that he was not developing resistance to Vicodin
4  and he pleaded with Defendant to maintain his prescription (Pla.'s Decl. ¶ 11), a difference
5  in judgment between Plaintiff and Defendant regarding appropriate medical treatment is not
6  enough to establish deliberate indifference. See Jackson, 90 F.3d at 332. Plaintiff does not
7  have any formal medical training, and his opinion does not establish that he had a serious
8  medical need for the 50 mg of Vicodin (Dep. of Steven Vlasich 20:16-23). Furthermore, the
9  fact that Dr. Zoher restored Plaintiff's Vicodin prescription about a week later, which
10 Plaintiff alleges made him feel much better, does not establish deliberate indifference. A
11 "mere difference of medical opinion" between Dr. Zoher and Defendant "[is] insufficient,
12 as a matter of law, to establish deliberate indifference." See Toguchi, 391 F.3d at 1058.
13 Even if Defendant somehow acted negligently, mere negligence or medical malpractice does
14 not establish a sufficiently culpable state of mind. Broughton, 622 F.2d at 460. As Plaintiff
15 fails to make a showing sufficient to establish that Defendant acted with deliberate
16 indifference, summary judgment in Defendant's favor is appropriate. See Celotex, 477 U.S.
17 at 322.

18   In conclusion, as a matter of law, Plaintiff cannot meet the high legal standard of a
19 deliberate indifference claim. See Toguchi, 391 F.3d at 1060. As such, the Court need not
20 address whether Defendant is entitled to qualified immunity. Plaintiff has not raised any
21 genuine issue of material fact over whether Defendant purposely acted to inflict unnecessary
22 and wanton pain upon him. See Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.
23 Therefore, summary judgment in Defendant's favor on Plaintiff's deliberate indifference
24 claim is appropriate as a matter of law.

25   Accordingly,

26   **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Dkt.
27 20) is **GRANTED**.

28 ///

1   **IT IS FURTHER ORDERED** that the Clerk of Court must terminate this matter.

2   DATED this 4th day of December, 2009.

_____
Stephen M. McNamee
United States District Judge